**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

ZORAIDA VAZQUEZ MERCADO,

    Plaintiffs,

    v.

MATILDE BRENES HOSPITAL, INC., et al.,

    Defendants.

**Civil No. 06-2093 (GAG)**

**OPINION AND ORDER**

    Plaintiff, Zoraida Vázquez Mercado ("Vázquez"), filed this diversity suit under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 §5141, seeking damages for alleged medical malpractice stemming from a breast surgery performed in April of 2004. Defendant, Dr. Miguel A. Báez Stella ("Dr. Báez"), moves for summary judgment (Docket No. 83), alleging that Vázquez's cause of action is time-barred. After reviewing the facts and applicable law, the defendant's motion for summary judgment (Docket No. 83) is **GRANTED** and the complaint is hereby dismissed.

**I.  Factual & Procedural Background**

    The parties' summary judgment pleadings reveal the following uncontested material facts. On April 28, 2004, Dr. Báez performed ambulatory breast surgery on Vázquez and removed several cysts. See, Docket No. 84, ¶ 1. Vázquez experienced acute pain in her left breast once she was in the recovery room. During the following seven days the pain in Vázquez's left breast persisted and increased as the incision, which was partially open, began to spell blood clots. See Docket No. 84, ¶ 3. Due to her open wound, on or about May 4, 2004, Vázquez's husband took her to the emergency room at San Pablo Hospital, where she waited to be seen by Dr. Báez, who never arrived. See Docket No. 84-2 at 52-54. Subsequently, Vázquez visited the office of Dr. Báez, who told her that the bleeding and pain were normal, but not the open wound. See Docket No. 84, ¶ 4; Docket No. 84-2 at 57. Dr. Báez applied stitches to close the incision and ordered Vázquez to remain on antibiotics. See Docket No. 84-2 at 59. Vázquez's last visit with Dr. Báez was on May 25, 2004.

**Civil No. 06-2093 (GAG)**                                    2

Docket No. 84, ¶ 5.

During her deposition, Vázquez testified that after Dr. Báez removed her stitches, the wound remained open "in the center part". See Docket No. 84-2 at 60. According to Vázquez, Dr. Báez told her that she could continue working, even though at that time her wounds had not closed nor had they improved in any way. See id. at 60-61; Docket No. 84, ¶ 6. Vázquez further testified that about four months after she returned to work she began to bleed again from the wound and was referred to the nursing station at her work place. See Docket No. 84-2 at 62. There, she was told to go to the emergency room or to contact her operating physician. Id. After attempting to contact Dr. Báez and being told that he was on vacation and that she wouldn't be able to see him for another three weeks, Vázquez sought medical treatment from a different physician, Dr. Carlos Maldonado, who sent her to Matilde Brenes Hospital. Id. at 62-64; Docket No. 84, ¶ 7. Vázquez's wounds remained open during the interval between her last visit with Dr. Báez and her first visit with Dr. Maldonado.[1] See Docket No. 84, ¶ 8; Docket No. 84-2 at 68.

On January 18, 2005, Vázquez underwent a right partial mastectomy and a left breast excision biopsy, performed by Dr. Maldonado. See Docket No. 84, ¶¶ 9 & 10. After this surgery, her wounds remained open, continued to bleed, and she suffered from pain and breast deformities. Vázquez testified that Dr. Maldonado never explained the cause of her condition and that her wounds remained open through February of 2005, when she decided to travel to the United States for further medical treatment, as per her parents' recommendation. See Docket No. 84, ¶ 11-13; Docket No. 84-2 at 70-72, 74-75, 84. Around April of the same year, Vázquez visited Dr. James Frank at the Baystate Medical Center, where an examination revealed that the incision on her left breast had not completely closed due to a bilateral inflammatory disease caused by an unknown bacteria. See Docket No. 84, ¶ 14. Vázquez was then told by Dr. Frank that she should undergo an areolar exploration, which included the risk of nipple loss, poor cosmetics, and other negative side effects, in order to clean out the infected area. The operation took place around June of 2005, but

---

[1] Judging from the uncontested facts, Vázquez's first visit with Dr. Maldonado must have occurred between September and October of 2004.

**Civil No. 06-2093 (GAG)**                3

Dr. Frank had to perform additional surgeries in the following month to remove necrotic tissue from her breasts. See Docket No. 84, ¶ 15.

In 2006, Vázquez came to Puerto Rico to visit her children. During this visit she spoke with her sister in law, who told her to consult a lawyer because there was something unusual about the five operations that Vázquez had to undergo, the open wounds, and her continuous pain. At that point, Vázquez decided to meet with an attorney. See Docket No. 84, ¶ 16.

On October 30, 2006, Vázquez filed the original complaint in this case, seeking recovery of damages under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 §5141, for the negligent medical treatment provided by Dr. Báez and other co-defendants, pursuant to this court's diversity jurisdiction under 28 U.S.C. § 1332. See Docket No. 1. On October 3, 2008, after numerous procedural events, including the dismissal of the complaint in regards to other co-defendants, see Docket Nos. 58 & 72, Dr. Báez presented a motion for summary judgment and supplemental filings. See Docket Nos. 83-85. Vázquez opposed this motion on November 17, 2008. See Docket Nos. 92 & 93.

**II.    Summary Judgment Standard**

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law'." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. In order to defeat summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56 (e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a summary judgment motion,

the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

### III.    Discussion

The defense moves for summary judgment on the ground that the applicable statute of limitations in this case has lapsed. Puerto Rico law provides a one year statute of limitations for tort claims brought under Article 1802 of the Civil Code. Article 1868 of the Civil Code, P.R. Laws Ann. tit. 31 § 5298, bars any action for recovery of tort damages brought more than one year from the time the aggrieved party has knowledge of the injury. Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000). A plaintiff has knowledge of an injury when he has (1) "notice of the injury" and (2) "notice of the person who caused it." Id. (citing Colon Prieto v. Geigel, 115 D.P.R. 232, 246 (1984)). Notice of the injury occurs when there exist some outward or physical signs through which the aggrieved party may become aware and realize that he has suffered an injurious aftereffect, which, when known, becomes a damage even if at the time its full scope and extent cannot be weighed. Id. at 19 (citing Delgado Rodriguez v. Nazario de Ferrer, 121 D.P.R. 347 (1988)). Once a plaintiff is on notice of the injury, he may "not wait for his injury to reach its final degree of development and postpone the running of the period of limitation according to his subjective appraisal and judgment." Id. (citing Ortiz v. Municipio de Orocovis, 113 D.P.R. 484, 487 (1982)).

The second prong of the *Colón Prieto* test, "notice of the person who caused the injury," is required "so that the injured person 'may know who to sue.'" Kaiser v. Armstrong World Indus., Inc., 872 F.2d 512, 516 (1st Cir.1989) (quoting Colón Prieto, 15 P.R. Offic. Trans. at 330). The First Circuit has indicated that, "[t]he key inquiry under this prong of the knowledge requirement is whether plaintiff knew or with the degree of diligence required by law would have known whom to

sue." Id. (citations and internal quotation omitted); see also Rodriguez-Suris v. Montesinos, 123 F.3d 10, 16 (1st Cir.1997). Consequently, "actual knowledge is not required where, by due diligence, such knowledge would likely have been acquired." Villarini-García v. Hospital Del Maestro, Inc., 8 F.3d 81, 84 (1st Cir.1993). Once a plaintiff is made aware of facts sufficient to put him on notice that he has a potential tort claim, he must pursue that claim with reasonable diligence, or risk being held to have relinquished his right to pursue it later, after the limitation period has elapsed. Rodriguez-Suris, 123 F.3d at 16.

In the case at bar, Vázquez alleges that the uncontested facts contain no evidence that she knew who caused her injuries prior to the filing of the complaint. However, from the parties' summary judgment pleadings and the record in this case, even when interpreted in a light most favorable to the plaintiff, a different conclusion must be drawn. After Vázquez underwent surgery at the hand of Dr. Báez, on April 28, 2004, she had an open, bleeding incision which caused her "horrible pain". Docket No. 84, ¶ 3. This condition persisted and did not ameliorate, so much so that Vázquez had to visit the emergency room. According to Vázquez's testimony, after Dr. Báez removed her stitches the wound remained open for approximately four months, until she was treated by a different physician. See Docket No. 84-2 at 68. It is also an uncontested fact that during Vázquez's first post-op visit with Dr. Báez she was told that her open wound was not normal. See Docket No. 84, ¶ 4. By then, there were outward or physical signs that indicated to Vázquez that she had suffered an injurious aftereffect from Dr. Báez's surgical intervention.

These events took place over two years before the filing of the complaint in this case, which occurred on October 30, 2006. "If a plaintiff brings an action more than a year after the injury took place, she bears the burden of proving that she lacked the requisite 'knowledge' at the relevant times." Torres, 219 F.3d at 19 (citing Hodge v. Parke Davis & Co., 833 F.2d 6, 7 (1st Cir.1987) (citations omitted)); see also Fragoso v. López, 991 F.2d 878, 887 (1st Cir.1993); Kaiser, 872 F.2d at 516. Plaintiff makes a self-serving allegation in her *Memorandum in Opposition* (Docket No. 92) by simply stating that she knew of her injury but not that Dr. Báez had caused it. By the summer of 2004, Vázquez knew of sufficient facts to put her on notice that she had a potential tort claim against Dr. Báez. Reading the uncontested facts in the light most favorable to the plaintiff, the only logical

**Civil No. 06-2093 (GAG)**                                6

conclusion that can be drawn is that Vázquez filed her complaint a year too late only because it took her that long to consult an attorney.  "A plaintiff cannot rest on ignorance caused by his own lack of diligence as a justification for his failure to comply with the prescriptive period unless fraud was involved to deprive the interested party of knowledge."  <u>Aldahonda-Rivera v. Parke Davis & Co.</u>, 882 F.2d 590,  593 (1st Cir. 1989).  It was Vázquez's responsibility to pursue her claim diligently or risk relinquishing her rights if the statute of limitations ran out.  Conclusory statements by Vázquez that she did not know who had caused her injury are insufficient.  Moreover, the fact that she did not timely consult an attorney is no excuse for filing the complaint after the statute of limitations ran out.  <u>See, e.g.,</u> <u>Villarini-García</u>, 8 F.3d at 85 (it is irrelevant whether plaintiff knew the full legal implication of the relevant facts, as long as she had knowledge of such facts which created a reasonable basis for concern about malpractice).  Therefore, although this presents a lamentable circumstance for Vázquez, her negligence claim under Article 1802 of the Puerto Rico Civil Code is time-barred.

**III.     Conclusion**

For the forgoing reasons, the court **GRANTS** the defense's motion for summary judgment (Docket No. 83) and dismisses this complaint on the statute of limitations ground.

**SO ORDERED**.

In San Juan, Puerto Rico this 8th day of December, 2008.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ
United States District Judge